THE PEOPLE ex rel. John J. Healy, State's Attorney, Re-
'.  lator, vs. MILT H. ALLEN, Respondent.

*Opinion filed February 16, 1910—Rehearing denied April 7, 1910.*

1. ATTORNEYS AT LAW—*an attorney has no right to appropriate
client's money, even temporarily.* An attorney has no right to
appropriate to his own use, even for a temporary purpose, money
collected for his client, and if money so collected is not paid over,
particularly after demand, it is the duty of the Supreme Court to
deprive the attorney of his license to practice law.

2. SAME—*fact that a client recovers judgment against attorney
does not preclude disbarment.* The fact that a client recovers a
judgment against her former attorney for the amount of money
which the attorney had collected for her and refused to pay over
upon demand, does not bar a proceeding to disbar the attorney for
his improper conduct in appropriating the money for his own use
without the client's consent.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

MILT H. ALLEN, for himself.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an information filed in this court, upon the re-
lation of the grievance committee of the Chicago bar as-
sociation, to strike the name of Milt H. Allen, a regularly
licensed attorney practicing his profession in the city of
Chicago, from the roll of attorneys of this court.

The information charges the respondent with a viola-
tion of section 7 of chapter 13 of the Revised Statutes,
(1 Starr & Cur. Stat.—2d ed.—p. 491,) which reads as
follows: "In all cases when an attorney of any court in
this State, or solicitor in chancery, shall have received, or
may hereafter receive, in his said office of attorney or so-
licitor, in the course of collection or settlement of any
claim left with him for collection or settlement, any money

or other property belonging to any client, and shall, upon demand made, and a tender of his reasonable fees and expenses, refuse or neglect to pay· over or deliver the same to the said client, or to any person duly authorized to receive the same, it shall be lawful for any person interested, to apply to the Supreme Court of this State for a rule upon the said attorney or solicitor, to show cause, at a time to be fixed by the said court, why the name of the said attorney or solicitor should not be stricken from the roll, a copy of which rule shall be duly served upon said attorney or solicitor at least two days previous to the day upon which said rule shall be made returnable; and if, upon the return of said rule, it shall be made to appear to the said court that such attorney or solicitor has improperly refused or neglected to pay over or deliver said money or property so demanded as aforesaid, it shall be the duty of the said court to direct that the name of the said attorney or solicitor be stricken from the roll of attorneys in said court."

The respondent appeared and answered the information, and the case was referred to George T. Kelly, one of the masters in chancery of the superior court of Cook county, as commissioner, to take the proofs and report his conclusions. The commissioner heard the proofs and made a report, in which he found that the respondent had, in the capacity of attorney at law, collected $224.59 for a client by the name of Cora A. Marnitz, of the city of Chicago, and $325 for a client by the name of William E. Scott, of Sheldon, Iowa, which several amounts the said Milt H. Allen, on demand, had improperly refused and neglected to pay to said Cora A. Marnitz and William E. Scott, respectively, and recommended that the name of Milt H. Allen be stricken from the roll of attorneys of this court. The respondent filed objections to the commissioner's report, which by the commissioner were overruled, and a transcript of the proceedings before the commissioner having been. filed in the office of the clerk of this court by the

respondent, he has renewed said objections as exceptions to the commissioner's report in this court.

It appears from the evidence that the respondent is upwards of the age of fifty years; that he was admitted to the bar in the State of Iowa in the year 1881; that he removed to this State in 1902 or 1903 and was admitted to the bar in this State on October 18, 1904; that in April, 1908, he was retained by Cora A. Marnitz to obtain for her a divorce from her husband; that a decree of divorce was entered in favor of Cora A. Marnitz on the sixth of June, 1908, on which day the attorney of the husband of Cora A. Marnitz paid to the respondent $940 for Cora A. Marnitz in full for her solicitor's fees and alimony in said divorce suit; that the respondent retained $125 as solicitor's fees, $15.41 which he used in paying a coal bill for Cora A. Marnitz, and on June 17, 1908, gave to Cora A. Marnitz his check for $500, which several amounts aggregated the sum of $640.41, and left remaining of the $940 received, in the hands of the said respondent, the sum of $299.59; that on the 24th day of June, 1908, Cora A. Marnitz made a demand upon the respondent that he immediately pay to her the said sum of $299.59 so remaining in his hands as her attorney, which he improperly failed and neglected to do, but subsequently paid her of the said amount at one time $50 and at another time $25, leaving due Cora A. Marnitz the sum of $224.59 at the time this information was filed, and which sum still remains in the hands of the respondent.

It also appears from the evidence that in 1907 H. A. Scott, of Sheldon, Iowa, was killed in a railroad accident; that his son, William E. Scott, was appointed administrator of the estate of H. A. Scott, deceased; that he retained the respondent to represent him in enforcing a claim for damages against the Chicago, Milwaukee and St. Paul Railroad Company, claimed to have accrued against said company in consequence of the death of said H. A. Scott;

that the respondent settled said claim with said railroad company for $500, which was paid to the respondent by said railroad company in settlement of said claim, $125 of which the respondent retained as his attorney's fees, leaving in his hands the sum of $375 belonging to William E. Scott as administrator; that after repeated demands the respondent paid $50 to said William E. Scott, which left $325 in the hands of the respondent belonging to said William E. Scott as administrator, which amount, although repeated demands have been made for the payment thereof before this information was filed, the respondent had failed to pay..

The respondent admits that he has in his hands $224.59 belonging to Cora A. Marnitz and $325 in his hands belonging to William E. Scott as administrator, which several amounts he received as the attorney of said parties, respectively, and which he has not paid to them or either of them, although they have each repeatedly made demand upon him for the payment thereof, and claims that he has not improperly refused and neglected to pay the amounts in his hands to said Cora A. Marnitz and to William E. Scott within the meaning of section 7 of chapter 13 aforesaid, it being his contention that at the time he gave Cora A. Marnitz the $500 check she loaned him the balance of the money in his hands belonging to her for an indefinite period upon his promise to pay the same to her when requested, and that the money which he received from the railroad company in settlement of the claim of William E. Scott, as administrator, was lost by him or was stolen from him, since which time he has been unable, for want of funds, to pay the same to William E. Scott.

As to the first charge,—that is, the charge of refusing to pay over to Cora A. Marnitz, on demand, the sum of $224.59 which the respondent collected as her attorney,— the evidence is conflicting. Cora A. Marnitz testified she did not loan to respondent said sum of money or consent

that he retain the same; that she did not know for some days after the hearing in the divorce case that respondent had received her money, and that she learned of the receipt of the money by the respondent through a party other than the respondent; that she called the respondent up by telephone and called at his office a number of times between the 6th and 17th days of June, and was unable to see the respondent or to hear from him during that time, except to the effect that he was very busy and could not see her; that on the 17th day of June she went to his office, in the city of Chicago, and remained in his office until she had an opportunity to see him; that on that day he paid her $500 and stated to her that he would pay her the balance within a very short time; that she returned to his office on the 24th day of June and demanded the balance of her money but that the respondent put her off and did not pay her, whereupon she employed another attorney to collect from the respondent the balance due her. The respondent testified that Cora A. Marnitz called at his office on the 17th day of June, when he had the amount due her and wanted to pay her the full amount due her, but she did not want to receive more than $150 or $200 of the amount due her and desired the respondent to keep for her the balance of the money; that the respondent at first declined to retain any part of her money, but after some persuasion on her part he agreed to keep for her, for a time, $300 of the amount he had collected for her and paid her $500 by check. A man by the name of Dan J. Dwyer claims to have been in the respondent's office at the time the $500 check was given to her, although Cora A. Marnitz denies Dwyer was present at that time, and Dwyer testified to a conversation which he claimed to have heard at that time between the respondent and Cora A. Marnitz, which, if true, tends to show that $300 of the money which the respondent had received and which was then in his hands was loaned to the respondent by Cora A. Marnitz.

We think the facts and circumstances surrounding the transaction with reference to the payment of the money to Cora A. Marnitz collected for her by respondent strongly tends to show that Cora A. Marnitz did not loan any part of said amount to the respondent. The respondent was almost wholly unknown to Cora A. Marnitz at that time, and he appears to have been without financial responsibility. At the time the $500 check was given, Cora A. Marnitz had a savings bank account in Chicago which was drawing interest, and she deposited $490 of the amount she collected on the $500 check to that account. After she was at the respondent's office on the 24th of June and failed to get the balance of her money, she immediately went to the office of another attorney and placed the matter in his hands for collection. That attorney immediately called up the respondent by telephone, and he admitted he had $299.59 of Cora A. Marnitz's money in his hands, and afterwards so stated in writing, but the respondent did not at that time, and did not thereafter and until about the time this proceeding was commenced, claim that he held said money as a loan, but at all times expressed a desire to pay the amount admitted to be due and only asked for a little time to get the money with which to make payment. It is strange, if the claim subsequently made that the respondent had retained the money as a loan was true, that when called upon by Cora A. Marnitz, and subsequently by her attorney, to make immediate payment, he did not decline to pay on the ground that the money was held by him as a loan and that the loan was not then due. At the time it is claimed by respondent he borrowed the money no obligation was given Cora A. Marnitz therefor by respondent, and he does not claim to have agreed to pay her interest thereon, although her other funds were drawing interest in a savings bank. Neither does he claim there was any fixed time when payment should be made, and the evidence, when considered as a whole, is convincing that the respondent

was, at the time the $500 check was given, in need of money, and very persuasive that the balance of Cora A. Marnitz's money had at that time been used by the respondent, and that he was then unable to pay to her the entire amount which he had collected for her from her husband. In any event, on the 24th of June, when Cora A. Marnitz called, and subsequently, on the same day, when her attorney called, the respondent was unable to pay Cora A. Marnitz the amount then due her,—at least he did not pay her,—and he made no claim at that time that he had borrowed the balance of Cora A. Marnitz's money at the time the $500 check was given to her by him. We are impressed from the evidence that the loan feature of the transaction as evolved by the respondent was an afterthought on his part.

The section of the statute hereinbefore set out, and with the violation of which respondent is charged, is a wholesome law and should be strictly enforced by the courts. No attorney has the right to collect money for a client and afterwards appropriate it to his own use, even for a temporary purpose. The only safe and honorable practice is for an attorney who has collected money for a client to treat the money in his hands belonging to his client as a trust fund and immediately account for and turn over to his client his client's money, and in case it is not paid over to the client at once, and particularly after demand, the attorney improperly withholding the same is an unsafe person to represent the interests of others and is not entitled to retain a license from this court authorizing him to practice law.

It is said by respondent the fact that Cora A. Marnitz brought suit in assumpsit in the municipal court against him and recovered judgment for the amount which the respondent had unlawfully refused to pay over to her upon demand should be held to be a bar to this proceeding. We cannot accede to this view. We have held that where

the misconduct charged against an attorney involves the commission of a criminal offense and the attorney has been tried and acquitted of such offense, this court will not disbar such attorney on account of such charge. (*People* v. *John*, 212 Ill. 615.) The bringing of a civil suit to enforce payment of money unlawfully withheld by an attorney from his client, and a recovery of a judgment for the amount so withheld in a civil action, will not, however, relieve the attorney from the moral turpitude involved in the transaction. In a disbarment proceeding moral turpitude is involved, as it is in a trial upon an indictment for embezzlement, while in a suit before the municipal court on a money demand it is not. (*People* v. *John, supra.*) The civil suit brought by Cora A. Marnitz and the recovery of judgment for the amount of her claim is no bar to this proceeding. The commissioner saw and heard the witnesses testify, and from an examination of this record we cannot say that his finding that the respondent was guilty of improperly refusing and neglecting to pay over to Cora A. Marnitz the balance of the money in his hands collected by him as her attorney was not fully established by the evidence, but, on the contrary, we think the charge was satisfactorily established.

It was testified to by the respondent that he had the money collected in settlement of the Scott claim, together with a considerable amount of money of his own, in his pocket, and was on the way to a bank in the city of Chicago to procure a draft to remit to William E. Scott the amount collected for him in settlement of his claim against the railroad company, and that on his way to the bank he stopped at a saloon to see a client and where he obtained a lunch and there had a $50 bill changed, and that when he arrived at the bank the money which he had in his pocket had been lost by him or had been stolen from him. No claim of this kind was made by the respondent for some

weeks after the money is now claimed to have been lost or stolen. The Scotts, father and son, were old Iowa friends of the respondent, and it is singular if he had lost the money collected on that claim in the manner in which he says he did, that he thereafter repeatedly wrote William E. Scott that he would soon remit to him the amount collected in settlement of his claim against the railroad company, and that he made no claim that he had lost the money or it had been stolen from him until after William E. Scott had written Mr. Lewis, the county attorney of Cook county, in regard to the failure of the respondent to remit to him the amount collected from the railroad company, and until after the county attorney had called upon the respondent with reference to the payment of the amount collected on said claim of William E. Scott and retained by him. We are satisfied with the finding of the commissioner that the respondent improperly neglected and refused, after demand, to pay over to William E. Scott the amount collected of the Chicago, Milwaukee and St. Paul Railroad Company for Scott in settlement of the Scott claim against said railroad company.

While it is true, as is said by the respondent, that it is a severe punishment to respondent to be deprived of his right to practice law, still it must be remembered by the respondent, and all attorneys similarly situated, that this court owes a duty to the people to see to it that the members of the legal profession who are practicing law by virtue of a license issued by this court deal honestly and fairly with all persons who trust them in the capacity of attorneys at law, and that in case a member of that profession violates his obligation as an attorney at law and improperly neglects and refuses, upon demand, to turn over to his clients money which he has collected for them in his capacity as an attorney at law, it devolves upon this court to deprive him of his authority to practice law.

241—26

The findings and recommendations of the commissioner will be approved and the name of Milt H. Allen will be stricken from the roll of attorneys of this court.

*Rule made absolute.*