[L. A. No. 18785. In Bank. Sept. 28, 1945.]

FRANK B. BENNETT, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Edgar G. Langford for Appellant.

Charles C. Crouch and Jerold E. Weil for Respondent.

THE COURT.—The petitioner seeks a review of the recommendation of the Board of Governors of The State Bar that in one matter he be publicly reprimanded and in another that he be suspended from the practice of the law in this state for the period of one year.

The petitioner was admitted to the bar in this state in June, 1919, and has engaged in practice in the county of San Diego. In February, 1943, he was charged in three counts with the commission of acts involving moral turpitude (State Bar Act, § 6106) and the violation of the rule prohibiting commingling of clients' money with personal funds (Rules of Professional Conduct, rule 9). Hearings before the local administrative committee resulted in a recommendation to the Board of Governors that the petitioner be disbarred. On modified findings the Board of Governors originally recommended to this court the disbarment of the petitioner. Thereafter the court on its own motion remanded the proceedings to the Board of Governors for the taking of additional evidence with reference to the matters involved in the first two counts. After further hearings the Board of Governors adopted new findings on all three counts, recommending a public reprimand as to counts one and two, and a one-year suspension as to count three. The several matters will be reviewed in the light of the final findings and recommendations presented by the board.

### COUNTS ONE AND TWO, AS TO GARBER AND RYAN

█ These counts are based on the petitioner's applications to Municipal Judge John J. Brennan to modify the sentences imposed on Francis G. Garber and John Jerome Ryan and to discharge them.

Garber and Ryan, both serving with the United States Navy, were arrested on July 11, 1942, in the city of San Diego and were charged with being lewd and dissolute persons in violation of Penal Code, section 647.5. Unrepresented by counsel, they were arraigned before Judge Brennan and on advice of police officers pleaded guilty. Each received a straight sentence of 120 days in the county jail. While they were confined a mutual acquaintance of Ryan and the petitioner sought the latter's services in obtaining their release. The petitioner learned that the commitment was under sentence imposed by Judge Brennan. Judge Brennan and the petitioner had occupied the same suite of offices for a number of years, although they were not partners. Petitioner told the friend of Ryan of his personal acquaintance with the judge and the fact of his former association, but with no suggestion that he could bring any influence to bear on the matters except as warranted by the facts. The petitioner agreed to accept a fee of $200 from each man. He received $200 from Ryan. Garber paid $25 which he borrowed for the purpose, and gave a note for $175 for the balance.

It was the custom of Judge Brennan in imposing sentences to reserve jurisdiction by suspending the last day of the sentence; but in the cases of Garber and Ryan he had omitted to do so. It was also his policy to return service men to their outfits before the termination of their sentences if the background and character of the men appeared to warrant it. The petitioner was familiar with the custom and the policy. Although he knew that the court would have no jurisdiction to modify a straight sentence (Pen. Code, § 1215), he did not have any definite information as to the sentences imposed. Relying on Judge Brennan's custom to retain jurisdiction, he did not make an investigation of the records to determine the nature of the sentences. There was considerable inconvenience to practioners in making such an investigation. The department presided over by Judge Brennan was crowded with business and the court records were not kept in the courtroom but at a distance in the same building. Lawyers were not permitted free access but were required to request the clerk to obtain the record, and such request would have interfered with the work of the court. The petitioner relied on the court to determine what the sentences were and to do what was proper in the circumstances. He presented to Judge Brennan the results of his investigation of the background

and character of his clients together with the facts concerning their connection with the naval forces, and informally applied for their release, making several such informal appearances. In conformity with his policy Judge Brennan, being satisfied of the merit of the showing, signed an order in each case suspending the remainder of the sentences and releasing the men on condition that they leave San Diego immediately and not return for two years unless as members of the armed forces of the United States. In making the orders Judge Brennan relied on his clerk and assumed and acted under the belief that he had followed his usual custom of reserving jurisdiction. Inasmuch as he had not done so the men were rearrested after their release and served the balance of their terms. Subsequently the petitioner learned that Garber had not repaid the $25 borrowed to make the initial payment on the agreed fee and the petitioner remitted the amount to the lender.

The foregoing is taken from the findings of the Board of Governors. The board also found that all of the proceedings in the Criminal Department of the San Diego Municipal Court presided over by Judge Brennan were informal; that in the checking of the records he relied on his clerk, who prepared the modifications of sentences and presented them to him for signature; that in the circumstances, there was no impropriety on the petitioner's part because of the way in which he made application for relief. It was also found that the petitioner made no representations as to the state of the record, or as to the sentences which had been imposed; that he did not misrepresent or impose on the court in this respect by way of affirmative statement, nor did he accept employment knowing that nothing could be done; that petitioner was not as to counts one and two guilty of conduct involving moral turpitude. Nevertheless, the board recommended that the petitioner be publicly reprimanded, basing the recommendation on the further finding of negligence and violation of duty both to clients and to the court in not ascertaining the state of the record and the terms of the sentences imposed.

The findings of the board are inconsistent with each other and with the recommendation. The board absolved the petitioner of moral turpitude, and of blame for the failure of the court to ascertain the state of the record at the time the orders of suspension were signed, and attributed the failure of the petitioner to acquaint the court with the state of the record to excusable neglect. The finding of a violation of duty on

the part of the petitioner is dissipated by the board's other findings, and there is no substantial basis in the evidence for the recommendation that the petitioner be publicly reprimanded as to counts one and two.

## COUNT THREE, THE BATTS MATTER

In April, 1942, a colored woman by the name of Fanny Batts employed the petitioner as an attorney to obtain a lease for her of the Pacific Hotel which had been evacuated of Japanese and whose effects were about to be sold at auction by the Alien Property Custodian. She was an intelligent woman and experienced in business matters. On April 3d she deposited the sum of $100 with petitioner for which he gave her a receipt marked "a/c legal services." Subsequently there was a change of relationship, whereby it was understood that they form a partnership to obtain a lease in the petitioner's name; that the business be operated by Fanny Batts; that the petitioner furnish additional moneys needed; and that if the lease on the Pacific Hotel could not be obtained, some other suitable lease would be sought. In pursuance of this agreement Fanny Batts deposited with the petitioner, as funds to apply on the rent, $300 in July, and $237 in October, 1942, making a total of $637 including the $100 paid in April. The petitioner was unable to obtain a lease on either the Pacific Hotel or a second contemplated place, and the suggestion by him of a third property was rejected by Fanny Batts because the house was without adequate plumbing. In January, 1943, because of failure to secure a lease, she requested a termination of the business arrangement and a return of the funds deposited, including the first deposit of $100. Previously, in December, 1942, the petitioner had refunded $75 promptly on request. But in January he failed to accede to her request to return the balance of the moneys. He gave her $12 in cash and a note for $550 on a printed form payable "ninety . . ." after date without interest. She returned that note to him and received a ninety-day note which the petitioner neglected to sign. Finally, on January 7th he delivered a signed ninety-day note with the representation that it would be paid sooner, probably in two or three days. When payment was not forthcoming, and on January 16th, she complained to the district attorney's office and to the San Diego Bar Association. On January 26, 1943, after he learned of Mrs. Batts' complaints, the petitioner

paid her the balance of $550 and the note was cancelled. He admitted that he had no bank account nor any separate file or drawer for trust funds, but asserted that during the entire period of these negotiations he kept the money entrusted to him by Fanny Batts in his pocket in the same roll with his own money. A series of small unsatisfied judgments against the petitioner and a course of borrowing money from loan companies is disclosed by the record, although there is no direct evidence that he borrowed to meet payment of the note. When asked whether he had borrowed for that purpose he said, "No. What if I did? I didn't necessarily use it for this. I borrow money all the time." The petitioner testified that he did not see anything unethical in giving a note upon termination of the partnership, instead of using the funds which he said he had in his pocket.

The board found that the petitioner did not keep intact and in specie the funds received from Mrs. Batts, but that he diverted the funds from the purpose for which they were deposited except as to the amounts of $75 and $12 previously returned. The board treated the transaction as a partnership matter, and considered the funds deposited as partnership funds. It concluded that it was the petitioner's duty to hold them intact for the specific purpose of investment in a partnership venture and that upon failure of the venture to mature it was his duty to return the money promptly on demand; that he failed in his duty by (1) diverting the funds from the purpose for which they were deposited; and (2) by failing without justification to repay the money promptly upon demand. The board considered as favorable to the petitioner that there was no evidence that he overreached Mrs. Batts, or that he treated her unfairly, or that he intended to take advantage of her; that he never actually refused to repay the moneys deposited, including the original $100, although he performed legal services; and that he treated her more than fairly when, without compulsion, he included in the repayment the original $100 paid on account of legal services. The board also took into consideration as unfavorable the fact that there had been a prior disciplinary proceeding which resulted in disciplinary action in the form of a public reprimand.

The petitioner contends that there is no clear and convincing evidence that he was employed as an attorney in the Batts matter, so as to give the board jurisdiction. He urges that his own statement in that regard is a "mere conclusion

of law," that the acts agreed to be done by him were such as any qualified business man could perform, and that he made no charge for such services. The contention is without merit. The evidence that he was employed as an attorney at the inception of the relationship is as clear and convincing as his own oral and written admissions can make it, and the board found that he never definitely dropped his character as an attorney in the matter. However, considering the relationship as that of partners, the inhibition against diverting the funds to another than the use specified, and the failure to repay promptly on demand under the circumstances, would justify disciplinary measures in a State Bar proceeding, although the relationship may not be strictly on an attorney and client basis. ■ The existence of the partnership did not constitute a defense in the proceeding. (*In re Cruickshank,* 47 Cal.App. 496, 501 [190 P. 1038].) ■ The fact that the liability as between the attorney and his client was a civil one did not relieve him of amenability to disciplinary proceedings. (*Maggart* v. *State Bar,* 7 Cal.2d 495 [61 P.2d 451] ; *Jacobs* v. *State Bar,* 219 Cal. 59 [25 P.2d 401].) As stated in *Narlian* v. *State Bar,* 21 Cal.2d 876, 884 [136 P.2d 553], citing *Marsh* v. *State Bar,* 2 Cal.2d 75 [39 P.2d 403], the point at issue is whether the petitioner, in his management of this affair, has shown himself to be a person worthy of trust and duly appreciative of the ethics of the legal profession.

■ The petitioner has failed to refute the conclusions of the board that he was untruthful in his testimony regarding disposition of the deposit moneys, that he diverted the funds to another purpose, that he violated his duty to return them promptly upon request, and that the delay in making restitution until after complaints had been lodged was unjustifiable and did not absolve him from discipline. The record bears out the further express conclusions of the board that the petitioner is not fully alive to his duties and obligations as an attorney at law, is not aware of the degree of good faith and fidelity required of him. The disciplinary action recommended as to count three was therefore warranted.

It is ordered that the proceeding as to counts one and two be dismissed; and that as to count three the petitioner be suspended from the practice of law in this state for a period of one year, effective thirty days after the filing of this order.