## In re CHOATE.

No. 24918.   Oct. 8, 1935.

Motion to Modify Opinion Denied
Nov. 5, 1935.

Caleb Choate, for plaintiff in error.

Frank G. Anderson and W. H. Brown, for defendant in error.

CORN, J.   Disbarment proceedings were instituted against Caleb Choate, member of the State Bar of Oklahoma, before the administrative committee for the 13th section of the State Bar, upon complaint of J. E. Cunningham of Konawa, Seminole county The said Caleb Choate is a resident of Oklahoma City.

The respondent was not present at the hearing upon the complaint before the administrative committee, nor at the hearing before the Board of Governors, and therefore did not make any defense to the charges. Disbarment was recommended by both the administrative committee and the Board of Governors, and the transcript of the proceedings was certified and transmitted to this court by the secretary of the State Bar of Oklahoma. Upon satisfactory showing of the respondent, the matter was remanded to the Board of Governors for the purpose of permitting the respondent to introduce his defense.

The grounds upon which the proceedings

are based, as set forth in the complaint, are stated as follows:

"On or about the 1st day of January, 1931, the Cunningham Bolt Company of Konawa, Okla., handed a claim in the amount of $151.96 to Mr. Caleb Choate for collection. Said claim was against Tincher & Brown of Oklahoma City, Okla. Caleb Choate was to receive 25 per cent. of the amount recovered as his fee for handling said claim. On or about the 25th day of April, 1931, Caleb Choate obtained judgment for the Cunningham Bolt Company against Tincher & Brown in the sum of $158. Caleb Choate collected $118, but remitted to the Cunningham Bolt Company only $30. Although repeatedly requested by the Cunningham Bolt Company to pay the remainder of the sum due, said Caleb Choate has refused and still refuses at this time, of May 8, 1932, to pay any or all of said sum."

By way of answer the accused explained the transaction as follows:

"Answering the complaint herein, respondent admits that he was employed by Cunningham and Bolt to endeavor to collect through J. P. court a claim against an electrical concern as stated, but here alleges that said claim was in the sum of $176 instead of $152 as claimed in the complaint.

"That it later developed that said electrical concern had a claim against said Cunningham and Bolt for the sum of $24, and judgment was accordingly rendered for $152, giving plaintiffs the benefit of the rendering said $24 to judgment and allowing them credit on their claim as originally stated.

"That said claim was for the purchase price of an electrical refrigerator which failed to work and which purchaser could not use.

"That defendants filed an appeal to the district court and that at length the case was again tried before Judge Busby (assigned judge) and judgment was rendered for rescission of contract for the sum of $176 and some cents, credit allowed for the said $24, making net $152 (with some odd cents) rescission of the contract and order that plaintiff have no claim or right or possession and that refrigerator be returned to seller.

"That respondent took said claim as a justice court collection on a commission basis of 25 per cent. of claim, or $44 for the justice court case.

"That the local bar association makes the sum of $50 the minimum fee for a district court case, but that respondent did not intend to charge more than a maximum of said claim of $176, the portion of 50 per cent. or $88 for his services.

"The respondent remitted in different sums

the sum of $30, although owing to the said electrical company having gone out of business collection could not be enforced, but that respondent did procure a settlement to be had in small sums from one member of the company, Don Tincher, and arranged for the ultimate collection of the whole indebtedness and would have collected the whole had complainants herein permitted respondent to do so instead of directing him to desist from further efforts.

"That he was prevented from collecting the sum of $40 which he would have collected in due time from said Tincher and which so far as he knows may have been paid by him to them direct or to some other attorney for them.

"Respondent now shows that he paid them the said $30 and procured a settlement of the said $24 which makes the sum of $54, and that said sum of $40, which complainants prevented respondent from collecting after completing arrangements for same, makes the sum of $94, for which respondent should have credit against the said judgment of $176.

"That respondent received the sum of $110 and remitted the sum of $30, as aforesaid, leaving him the sum of $80, plus $5 advanced for a transcript, which sum was not used by reason of the appeal having been taken, making a total $85 retained by respondent, whereas one-half of said judgment would have been the sum of $88, the sum to which respondent was entitled as a reasonable sum for his services.

"Respondent now shows that he performed every duty in said cause as an attorney, that he informed said Cunningham-Bolt Company that collection would be slow, but that he had effected a settlement which would eventually get settlement in full of the money sought and that only through the obstruction of said Cunningham-Bolt Co. was he prevented from doing so, that respondent had obtained judgment in justice court after a contested trial, obtained a settlement which would have been carried out in full except for interference from clients as above stated.

"Respondent further shows that in order to obtain settlement it became necessary to return the said refrigerator to defendants pursuant to the order of rescission ordered by said Judge Busby, trial judge in district court, but that plaintiffs Cunningham-Bolt Company became incensed because payment in full was not made at time of the return of same and they criticised respondent for directing same returned by them without first collecting said judgment, whereas the court ordered a full complete rescission as a condition precedent to obtaining said judgment and made it a part thereof."

The complainant testified that respondent

agreed to handle the claim on a commission basis of 25 per cent. of the amount collected, while the respondent testified that he contemplated only a justice court action when the agreement was made, and since the case was appealed to the district court and tried de novo, he was entitled to charge 50 per cent. for the services necessarily rendered.

The action was brought to rescind a contract which involved the purchase of a refrigerator by the Cunningham-Bolt Company from Donald L. Tincher Electrical Company. The refrigerator failed to give satisfaction and the purchasers brought suit to recover the purchase price of $176. The case was tried in the justice court and judgment was rendered in favor of plaintiff for the purchase price. The defendant appealed the case to the district court, where the case was again tried and judgment rendered in favor of the plaintiff. The defendant, however, was allowed an offset against the judgment in the sum of $24 for an account which plaintiff owed defendant.

The complaint is predicated upon the theory that respondent converted to his own use a part of his client's money in that he did not remit all above 25 per cent. of the amount actually collected.

The parties are not agreed as to what was the net judgment recovered, complainant contending that it was $152 on account of the $24 offset, while the respondent contends that he is entitled to his commission on the basis of the $176 judgment. In this contention the respondent is right. Section 4205, O. S. 1931, provides:

"It shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action or claim not to exceed 50 per centum of the net amount of such judgment as may be recovered, or such compromise as may be made, whether the same arises ex contractu or ex delicto, and no compromise or settlement entered into by a client without such attorney's consent shall affect or abrogate the lien provided for in this chapter."

It does not appear that the $24 account for which the offset was allowed had any connection with the subject of the action, and that the plaintiff was liable for same irrespective of the refrigerator contract, and it is not proper to take into consideration that item in determining the net amount of the judgment recovered. To so hold would be tantamount to holding that if the defendant had brought in an offset equal to the amount of the contract sued upon the

attorney would not be entitled to any compensation for the services rendered. Section 4205, supra, is applicable to compromise settlements where the attorney consents to same, but the offset allowed in the instant case cannot be treated as a compromise of the claim, as full recovery was awarded on the contract. We, therefore, hold that the respondent was entitled to his commission upon the basis of $176.

Another item of dispute was in regard to the commission on the balance of about $40 remaining unpaid on the judgment at the time the complainant took the collection out of the hands of the respondent and placed it with other attorneys. It appears that the judgment debtors had gone out of business, but one member of the firm had made arrangements to pay the remainder of the judgment in monthly installments and was paying the same in that manner at the time the matter was taken out of respondent's hands. The respondent had collected $110 on the judgment and had remitted to his client $30, leaving him the sum of $80 plus $5 advanced for transcript which was not used, and making a total of $85 retained by respondent.

We are of the opinion that respondent had the right to retain sufficient of the money on hand to pay his commission of 25 per cent. on the entire amount of the judgment of $176. The complainant had no right to deprive the respondent of the fruits of his labor by taking the judgment out of his hands and not permitting him to collect the balance due on the same.

In construing our statute providing for an attorney's lien, in American National Bank v. Funk, 68 Okla. 169, 172 P. 1078, the court laid down this general rule:

"An attorney at law has a general possessory or retaining lien on the property or money of his client in his hands for his fees or for a general balance due him from his client, and such a lien is not lost while the money is still under the control of the attorney's agent."

This rule was applied in Roxana Petroleum Co. v. Rice, 109 Okla. 161, 235 P. 502, in which the court stated the general rule as laid down in 6 C. J. 766, as follows:

"Retaining Lien. The general or retaining lien of an attorney is his right to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general balance due him for professional services is paid. This lien has been recognized from the ear-

liest times and is said to have its origin partly in custom and partly in the prevention of circuity of action. While some question has been raised as to the correctness of the term 'lien' so applied, the right itself has never been denied. It is of common-law origin and the statutes providing for it and for its enforcement are merely declaratory of the common-law rule."

But we are unable to sustain the respondent's contention as to 50 per cent. commission charged. While the services actually rendered in the case would ordinarily be considered worth 50 per cent. of a claim of this amount, yet respondent took the claim for collection for 25 per cent., and he is bound by his agreement in the absence of a new agreement with his client; and the respondent himself admits that he had no new agreement with his client for an increased fee.

There are extenuating circumstances in the case, however, which should be taken into consideration. He had the right to charge the agreed percentage on the full amount of the judgment, as above stated, and the fact that the amount retained for services in the case was not unreasonable for the services actually and necessarily performed, but amounted to about the customary charge for such services, is in his favor, but does not justify the violation of his contract. As we view the case, disbarment, as recommended by the Board of Governors, would be too drastic a penalty under the circumstances. It is apparent that the respondent did not show good faith in his dealings with his client and his conduct in this respect cannot be condoned; therefore, respondent is suspended from practice 90 days from the time this opinion becomes final.

It has been repeatedly held that the Supreme Court in disbarment proceedings is not bound by the findings or recommendations of the local administrative committee or the Board of Governors of the State Bar, but will consider all the facts and circumstances revealed by the record in determining whether a member of the State Bar should be disciplined, suspended, or disbarred; such recommendations being merely advisory and recommendatory in character. In re Dick, 166 Okla. 114, 26 P. (2d) 412; In re Threadgill, 166 Okla. 301, 27 P. (2d) 601.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, WELCH, and GIBSON, JJ., concur. BUSBY and PHELPS, JJ., not participating.