**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Ben N. HATCHER, Respondent.**

**S.C.B.D. No. 2182.**

Supreme Court of Oklahoma.

March 4, 1969.

Rehearing Denied April 8, 1969.

Jeff R. Laird, General Counsel, Oklahoma Bar Association, for complainant.

Bob Lake Grove, Oklahoma City, for respondent.

JACKSON, Justice.

This is a bar disciplinary matter in which, after a full hearing pursuant to the Rules Creating, Regulating and Controlling the Oklahoma Bar Association, the Trial Authority found that respondent, Ben N. Hatcher, had violated the provisions of 5 O.S.1961, Sec. 7, and Canons 7 and 11 of the Canons of Professional Ethics, which have been adopted by this Court as the standards of professional conduct for members of the Oklahoma Bar Association.

The charges against respondent grew out of his representation of a Mr. Stelzer, in connection with a claim for damages for personal injuries.

5 O.S.1961, Sec. 7, in effect limits attorney fees under a contingent fee contract to not more than 50% of the amount of the *net* recovery. The violation of Canon 11, found by the Trial Authority, consisted of a failure to properly account for funds of the client in the respondent's hands. The violation of Canon 7 consisted of the acceptance of employment from Stelzer knowing that Stelzer had previously retained another attorney to handle the claim,

without first consulting with such attorney. The argument of respondent consists chiefly of a discussion of the weight of the evidence and the proper disciplinary action, if any, to be taken.

We have carefully examined the record before us and find that the Trial Authority's findings of fact are amply supported by the evidence.

Summarized, the evidence shows that on January 17, 1966, an Employee's First Notice of Injury (form 3) was filed with the State Industrial Court on behalf of Stelzer by Mr. W., an Oklahoma City attorney. The claim recited an injury resulting from a fall from a ladder on a ranch in Texas County, Oklahoma, on August 21, 1965. On March 23, 1966, respondent agreed to represent Stelzer in connection with the same claim, with knowledge that Mr. W. had previously been retained. The written contract between respondent and Stelzer called for a fee of "20% if industrial, 35% plus costs and expenses if civil". Respondent testified that he conferred with Mr. W. by phone that day; however, the record shows that Stelzer signed a claim that day (Mar. 23, 1966) and respondent filed it in the Industrial Court the next (Mar. 24, 1966) reciting the same accident described in the claim filed on Mr. Stelzer's behalf by Mr. W. Mr. W. testified that he was not contacted until March 28th, 1966, at which time he told respondent to "go ahead with the case and any fee we'll split down the middle". The claim in the State Industrial Court was later dismissed for want of jurisdiction as was anticipated by Mr. W. and respondent. Mr. W. never received an answer to his letter of May 4, 1967, inquiring about the Stelzer case.

On October 12, 1966, respondent filed a civil action for damages, based upon the same injury, in the District Court of Texas County at Guymon, Oklahoma. In January of 1967, Stelzer received a check for $671.00 representing accrued Social Security benefits. He was then living in Oklahoma City and respondent helped him cash the check at an Oklahoma City bank, retaining $270.00 from the proceeds of the check, with Stelzer's consent, for use as expense money in prosecuting the civil suit at Guymon. The evidence also establishes that Stelzer advanced $25.00 in cash to respondent for court costs, and that respondent received the proceeds of a $53.00 check to Stelzer from an insurance company for expenses in connection with a deposition.

On December 5, 1967, the damage suit was settled by compromise for $1000.00. A check in that amount payable to Stelzer and respondent was delivered by defendant's insurance carrier to respondent. On December 8, 1967, Stelzer came to respondent's office, endorsed the $1000.00 check and received respondent's check for $385.00. At that time he signed the following "settlement statement":

| | |
|---|---|
| Fee 35% | 350.00 |
| Depositions | 67.50 |
| Costs, District Court | 35.00 |
| Costs, Industrial Court | 5.00 |
| Loan 4–28–67 | 8.00 |
| Deposition and Dr. Faris Medical Report | 150.00 |
| | $615.00 |

Mileage and expense to Guymon, Oklahoma, previously paid by Stelzer        270.00

1000.00
615.00

385.00

I have settled and received my money in full less fees, costs, depositions, loan and medical bills.

Signed: Cecil Stelzer

Respondent obviously intended this as a final settlement between himself and his client. At that time Mr. Stelzer had the following sums invested in the case: $25.00, $53.00, and $270.00, a total of $348.00. From this sum must be deducted an item of $8.00 that respondent had loaned to Mr. Stelzer, leaving a net investment in the case for Mr. Stelzer the sum of $340.00. When $340.00 is subtracted from $385.00, the amount received from respondent, Mr.

Stelzer had a return of $45.00 out of this litigation. This settlement remained final until after respondent's conduct was brought to the attention of the Oklahoma Bar Association.

The fee charged in this case would have been excessive even if the contingent fee contract called for 50% of the recovery. In 5 O.S.1961, Section 7, it is provided in effect that an attorney may contract for a percentage of the recovery, not to exceed 50% of the *net* amount recovered. Schaff v. Richardson, 120 Okl. 70, 254 P. 496; Armstrong v. Martin, 203 Okl. 565, 223 P.2d 1072; In re Choate, 174 Okl. 446, 50 P.2d 706.

On Dec. 18, 1967, Stelzer presented to the Oklahoma Bar Association an almost illegible written complaint regarding the $270.00 which ended "all I want is it back". The next day, pursuant to the Rules Creating, Regulating and Controlling the Oklahoma Bar Association, respondent was notified in writing of the nature of the complaint. On January 4, 1968, respondent mailed a letter to bar counsel in the nature of a response to the informal complaint. In it, he outlined many of the facts already recited herein, including receipt of the $270.00 advanced by Stelzer, which he said was to be used for his expenses in "investigation and filing and trying the case at Guymon". He attached to the letter a copy of the settlement statement set out above, and a copy of his contract with Stelzer.

On January 11, 1968, in response to a request for an itemized statement concerning the expenditure of the $270.00, respondent mailed to bar counsel a letter detailing expenses incurred on two different trips of one day each from Oklahoma City to Guymon. This statement totaled $320.00, and included charges of $120.00 for mileage and meals and $200.00 ($100.00 per day) for "absence from the office".

The item of two trips to Guymon at the rate of $100.00 per day ($200.00) for "absence from the office" was not an item of expense, but a cash fee and an improper charge under the written contract.

At the end of respondent's letter to General Counsel, dated January 11, 1968, is the following paragraph:

"At the time Mr. Stelzer and I made our settlement on December 8, 1967, it was agreed that since I had been paid my expenses I waived my right to claim a ⅓ fee in the amount of money recovered from his injuries from the Defendant which money had been paid directly to the hospital and the doctor in the total amount of $432.75."

This so-called waiver of his right to claim one-third of the doctor and hospital bills waived nothing, as the record conclusively shows that these bills had been paid by checks on October 5, 1965, over five months before respondent was retained to handle the case.

Mr. W. first learned that the case had been settled when he was contacted in the course of the bar investigation by General Counsel early in 1968. A few days thereafter he called respondent about the fee. Respondent told him, among other things, "I've been out more money than I'll ever make, I've been out money for depositions and costs and everything" and respondent asked him to "just tell me how much I owe you". Without questioning the statement that respondent had lost money on the case, Mr. W. said "75.00 will be all right with me if it is all right with you" and respondent paid him that amount on February 15, 1968. Under respondent's settlement statement of December 8, 1967, Mr. W. was entitled to $175.00.

The formal complaint of the Bar Association against respondent was filed on February 26, 1968. Respondent's answer, thereafter filed, recited among other things that on March 4, 1968, he and Stelzer had "recalculated" the expenses incident to the Stelzer case and he had paid Stelzer an additional $270.00. Attached to the answer was a typewritten letter signed by Stelzer acknowledging receipt of the $270.00, "which is all of the money that I claimed

that he owed me", and requesting that he be permitted to withdraw his complaint.

■ Respondent's reimbursement of his client, ten weeks after·his notification that bar authorities had received an informal complaint from his client does not serve in extenuation of his offense.

■ From the record in this case it is clear that respondent has taken advantage of a client whom the Trial Authority found to be of very limited understanding or ability in business matters. The record supports the Trial Authority's conclusion that he encroached upon the employment of another member of the Oklahoma Bar Association; he failed to divide his fee with attorney W. at the time it was due; and persuaded him through misrepresentation to accept less than was due.

■ The attorney-client relationship is one of the highest trust and confidence. This relationship requires that an attorney's dealings with his client must be characterized by the utmost candor and fairness.

■■ Considering the whole record in this case it is abundantly clear that disciplinary action must be taken. The record shows that respondent was suspended from the practice of law for a period of three years in State ex rel. Oklahoma Bar Association v. Hatcher, 201 Okl. 683, 209 P.2d 873, for solicitation of professional employment. Prior conduct resulting in discipline will be considered in imposing discipline. Art. IX, Sec. 12, Rules Creating and Controlling the Oklahoma Bar Association. For the protection of the public he must be removed from the practice of law. It is therefore ordered that respondent be disbarred and that his name be stricken from the roll of attorneys authorized to practice law in the State of Oklahoma.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.