STATE of Oklahoma ex rel. OKLAHOMA
BAR ASSOCIATION, Complainant,

v.

H. Corky BISHOP, Respondent.

S.C.B.D. No. 2510.

Supreme Court of Oklahoma.

July 13, 1976.

Rehearing Denied Oct. 26, 1976.

Paul M. Vassar, Gen. Counsel, John Paul Johnson, Associate Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

H. Corky Bishop, pro se.

BARNES, Justice.

This matter is before us for review and approval of a Report and Recommendation of the Trial Authority appointed by this Court and under the provisions of Rules Creating and Controlling the Oklahoma Bar Association.

A complaint was filed against Respondent, H. Corky Bishop, by the Oklahoma Bar Association, wherein it alleged in two separate counts that Respondent violated the Code of Professional Responsibility and should be disciplined.

Allegations of the complaint were that Respondent accepted professional employment from one Roy E. Bass, to provide legal representation to said Bass in a cause entitled *Evans Box Manufacturing Corporation v. Roy E. Bass*; that pursuant to an interim order of the Tulsa District Court in that cause the sum of $12,250.00 was deposited in the office of the Clerk of the District Court of Tulsa County for the benefit of Roy E. Bass; and that the Respondent converted these funds to his own use and benefit and failed to notify his

client of the receipt thereof or pay his client the funds to which said client was entitled. That Respondent was employed in March, 1971, by Mrs. Narcissa Elder to provide legal representation to her in probating the estate of her deceased husband; that Respondent failed to competently handle the probate of this estate, failing to maintain complete records of all funds payable to his client and to render an appropriate accounting.

On August 29, 1974, Respondent was notified that complaints had been filed with the Oklahoma Bar Association by Mr. Roy E. Bass and Mrs. Narcissa L. Elder. Thereafter, a formal complaint was filed pursuant to the direction of the Board of Governors, and a copy transmitted to Respondent. On October 20, 1975, trial was conducted by Roger L. Benson, Trial Authority. Thereafter, memorandum briefs were submitted by both parties and the Trial Authority made the findings and conclusions of law as stated in his report, December 30, 1975, recommending the Court take disciplinary action against Respondent for the violations of the Code of Professional Responsibility as specified therein. Complainant in its brief to this Court submits that Respondent should be disbarred from the practice of law in Oklahoma. The matter is now before this Court for study and review. Each of the two counts will be discussed separately.

## COUNT I

Summarized, the evidence shows that Roy E. Bass was a stockholder in Evans Box Manufacturing Company from 1962 until 1972, when his services as an employee thereof were terminated. Subsequently, Bass entered into an attorney-client relationship with Respondent, who agreed to represent Bass in several lawsuits, including one suit styled *Evans Box Manufacturing Corporation v. Bass.* In that cause Evans Box sued Bass for specific performance pursuant to a contract whereby upon discharge he was forced to resell his stock to Evans Box for its par

value. Judgment was rendered, by which Bass was ordered to surrender stock owned in said corporation, and Evans Box tendered to the Clerk of the District Court of Tulsa County, Oklahoma, the sum of $12,250.00, pursuant to an interim order, in payment for said stock.

Bass, who at all times felt the stock was worth more, did not want to draw down the money in payment of the stock and was afforded an additional thirty days by the Trial Judge to find a bona fide third party purchaser for his shares to establish a market value.

Respondent proposed an Agreement to Purchase Stock wherein Bass's two daughters would make a conditional offer to purchase the stock for $86,000.00 by mortgaging their respective properties and depositing the cash in an escrow account.

The Bass family rejected this proposal and the attorney-client relationship deteriorated from that point. Thereafter, a decision was made to employ attorney Rhoem West as co-counsel, apparently as a result of dissatisfaction with Respondent.

While a Motion for New Trial was pending in the Evans Box case, supra, Respondent filed Motion to Withdraw Tender. Order was entered on same and Voucher No. 20657 was issued October 19, 1973, in the amount of $12,225.00. The payees shown thereon were "Roy E. Bass & H. Corky Bishop." Respondent personally signed the endorsements on the reverse side of the Voucher, including the purported signature of "Roy E. Bass." The same day, the Respondent deposited the $12,225.00 in his personal account in the American Bank of Tulsa, Tulsa, Oklahoma.

With regard to Count I, the only conflict in testimony in regard to withdrawal of the money on deposit by Respondent was whether it was withdrawn with or without the consent of Roy E. Bass.

The Trial Authority found this action was taken without the knowledge, approval or consent of Roy E. Bass and that the

funds were commingled with the personal funds of Respondent.

From a careful reading of the testimony contained in the record, we find it devoid of any express authorization for Respondent to either receive the money or to endorse the signature of Roy E. Bass to the voucher. Respondent must rely for any alleged inferred authorization upon Respondent's testimony imputing to Bass the statement: "Do what you think should be done."

We agree with the Trial Authority that such approval was not an unqualified approval for Respondent to do anything with the funds he desired, not even to remove the tendered money from the reach of Bass's Missouri creditors, as Respondent asserts. Respondent testified: "I had it in my mind what I was going to do, and what I did do was when I pulled the money out and got it to where it wouldn't be subject to the debt, I was going to give six hundred dollars a month to Roy to live on because he didn't have any income, and until he could get everything worked out and find out where we were going with the various lawsuits that were in progress."

We think the evidence amply supports the Trial Authority's finding that the funds were withdrawn without the consent or approval of Mr. Bass. Co-counsel Rhoem West, who was active in the case, was not aware of the withdrawal, nor did Respondent consult him prior to withdrawing the funds. Also, Mr. Bass's actions support the conclusion the funds were withdrawn without his knowledge, consent, authority, or permission.

The Canons of Professional Ethics of the American Bar Association have been adopted by this Court, and any member of the Association who violates the Canons shall be subject to discipline. Article IX, Section 7, Rules Creating and Controlling the Oklahoma Bar Association. Canon 9 provides: "A lawyer should avoid even the appearance of professional impropriety." Thereunder, Disciplinary Rule (DR) 9–102 provides for "Preserving Identity of Funds and Property of a Client":

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

This Court has previously imposed discipline for violations of this type in *State ex rel. Oklahoma Bar Association v. Smith,* 510 P.2d 936 (Okl.1973); *State ex rel. Oklahoma Bar Association v. Myers,* 424 P.2d 975 (Okl.1967); and *State ex rel.*

*Oklahoma Bar Association v. Burger,* 401 P.2d 524 (Okl.1965), including suspension and disbarment for such unprofessional conduct.

An examination of the record discloses the Trial Authority correctly concluded Respondent was in violation of this Disciplinary Rule in handling the aforementioned funds. Respondent did not deposit the funds in a separate, identifiable bank account maintained for the purpose of segregating client funds from his separate funds; he did not notify his client of the receipt of the funds; and he did not maintain complete records of all the funds and did not render an accounting to his client regarding the funds.

### COUNT II

The second count of the Complaint was that Respondent was employed by Mrs. Narcissa Elder to provide legal representation to her in the probate of her deceased husband's estate. At that time, Respondent was her son-in-law. It was agreed that Respondent would complete work on Mr. Elder's cases pending at the time of his death and that there would be a fifty-fifty fee division between Respondent and the estate. It was also understood Respondent would maintain the law library for the benefit of James Elder, then a legal intern. Mrs. Elder executed a power of attorney drafted by Respondent authorizing him to accept payment of any judgments or settlements.

During such representation, Respondent had under his control the sum of $15,126.99 which was the property of the Estate of C. Lawrence Elder, deceased, or Mrs. Narcissa Elder. During the following year, Mrs. Elder made several attempts to ascertain from Respondent the current financial situation concerning the estate and whether any of the cases pending were settled, but was unable to find out what monies were being spent or collected.

When Mrs. Elder began receiving calls from creditors of the estate, she consulted other counsel. Her subsequent attorney engaged the services of a certified public accountant who reviewed the work sheets of information prepared by Respondent's office listing deposits and disbursements which were part of the Elder Estate File. Using the figures prepared by the accountant, the attorney prepared a Memorandum of Agreement in which Respondent acknowledged an obligation to Mrs. Elder of $15,126.99.

The accountant testified the records in Respondent's office reflected that the deposits and disbursements in the Elder Estate were in an individual account shown under a name recalled by him as "Miss Moore." Such an account does not fall within the orbit of DR 9–102(A).

Clearly such funds were not deposited in an identifiable bank account for the segregation of client funds. Nor did Respondent promptly notify Mrs. Elder of the receipt of the funds. We think the evidence amply supports the Trial Authority's conclusion that Respondent converted such funds to his own use and benefit.

We have previously held that failure to pay a client money belonging to him justifies disciplinary sanctions. *State ex rel. Oklahoma Bar Association v. Bruce,* 449 P.2d 894 (Okl.1969).

Subsequently, Respondent signed an agreement to repay such funds to Mrs. Elder in periodic payments. We agree with the Trial Authority that Respondent's reimbursement to Mrs. Elder does not serve in extenuation of the offense. *State ex rel. Oklahoma Bar Association v. Hatcher,* 452 P.2d 150 (Okl.1969).

There is virtually no conflict concerning the essential facts regarding Count II. From a careful study of the record, we are of the opinion that the conduct of the Respondent as attorney for the involved estate was in violation of the standards of professional ethics.

The attorney-client relationship is one of highest trust and confidence, requiring that an attorney's dealings with his

client must be characterized by the utmost candor and fairness. *State ex rel. Oklahoma Bar Association v. Hatcher*, supra. The evidence amply supports Respondent's violation of that relationship under both counts of the Complaint.

■ After full consideration of all the evidence and a review of the record in the case, we hold the gravity of Respondent's offenses, and the submitted proof, justifies disbarment. It is hereby ordered that Respondent, H. Corky Bishop, be and he is hereby disbarred from the practice of law, his license to practice is hereby revoked and canceled, and his name stricken from the roll of attorneys authorized to practice law in the State of Oklahoma.

All Justices concur.