2015 OK CIV APP 81

**Cassie GRAVES, Plaintiff/Appellant,**

v.

**N. Scott JOHNSON, Defendant/Appellee.**

**No. 113064.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 20, 2015.

Rehearing Denied March 24, 2015.

Richard D. Gibbon, Gibbon, Barron & Barron, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

N. Scott Johnson, N. Scott Johnson & Associates, P.L.L.C., Tulsa, Oklahoma, for Defendant/Appellee.

BRIAN JACK GOREE, Presiding Judge.

¶1 Plaintiff/Appellant, Cassie Graves (Client), seeks review of the trial court's order granting summary judgment in favor of Defendant/Appellee, N. Scott Johnson (Lawyer) in Client's action for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. We affirm because Client's allegations do not state an actionable claim for bad faith and there is no evidence that Lawyer breached a duty that is fiduciary in nature.

¶2 Client's petition alleged that she and Lawyer executed an attorney-client contract on March 23, 2001. She alleged that during their initial visit on the same day, she advised Lawyer that she did not have sufficient money or credit to pay a retainer, and he told her that he would proceed with collection of the attorney fees from Client's husband, the petitioner in their divorce action. She alleged he stated that he would file a pleading indicating there was a $10,000.00 retainer in the attorney/client contract.

¶3 Client alleged that Lawyer thereafter received payments of $3,500.00 and $5,000.00 from her husband in the divorce, and continued to try to collect the balance of the fee from him until January 2012, when the negotiations failed. She alleged that she received from Lawyer a document entitled "Important Notice," which sought to collect the balance of Lawyer's fee from her. She alleged that the Important Notice breached the covenant of good faith and fair dealing and breached Lawyer's fiduciary duty to her. She alleged she was confused and frightened by the notice, and it was contrary to his representations and outward actions as to the handling of the divorce proceedings. She alleged she paid Lawyer $5,000.00. She sought compensatory damages for pain and suffering, as well as punitive damages.

¶4 Lawyer admitted entering into the attorney-client contract and sending the Important Notice to Client, but otherwise denied the allegations. He moved for summary judgment and submitted a copy of the attorney-client contract.

¶5 The contract provided, in part:

2. That the compensation of Attorney will be based upon an hourly rate for all time expended in connection with Client's case....

3. Client agrees to pay a retainer of $10,000....

Client agrees to pay all reasonable expenses incurred by Attorney....

4. Client understands that Client will receive monthly itemized billing statements from Attorney. These statements are due in full upon receipt. Any sums not paid in full within thirty (30) days of the date of the respective monthly statement will accrue interest at the rate of 23.99 percent per annum. Client further understands that his or her account must be paid in full and in a current status not less than ten days prior to trial.

¶ 6 Client objected to the motion for summary judgment, submitting her own affidavit in support. Her affidavit stated:

2. I went to [Lawyer] ... for the purpose of discussing his representation of me in the ... divorce action.... It was determined during our discussion that all of [Lawyer's] legitimate attorney fees for representing me in the divorce action would be collected from [the divorce petitioner] Daniel Graves.

3. [Lawyer] explained to me the need for the written Attorney/Client "Contract" was to have something to present to the Court and to Daniel Graves reflecting [Lawyer's] representation of me in the divorce action.

4. [Lawyer] asked me to sign an already completed Attorney/Client "Contract" which had a blank for the dollar amount of a retainer. He filled in the amount of $10,000 in the blank, in accordance with our agreement to collect his attorney fees from Daniel Graves.

5. I received monthly statements from [Lawyer] which I understood to be in accordance with his statement to me that he needed evidence to present to Mr. Graves. After some months, I received a notice that the account was in arrears and I immediately called [Lawyer's] office to ask what this meant or what are you all doing, and I was told by [Lawyer's] secretary

that I should not be concerned and that there was nothing for me to do.

6. An agreement for Daniel Grave's [sic] payment of the entire attorney fee of [Lawyer] was made, which was accepted by [Lawyer]. Yet, this agreement was refused by [Lawyer] after he was told payments would be made monthly instead of by post-dated checks.

7. Contrary to our agreement, [Lawyer], who had knowledge of my IRA, demanded payment from me for his attorney fees. I did make payment to him due to the pressure he placed on me. [Lawyer] has continued to make demands on me for payment of the balance of his attorney bill.

¶ 7 After a hearing, the trial court granted summary judgment in favor of Lawyer. The court acknowledged the existence of a disputed question of fact as to whether Lawyer orally guaranteed that he would seek all fees from Client's husband or merely asserted he would try to collect the attorney fees from him. The trial court noted, however, that Client was not seeking damages for negligence or breach of the written contract, but for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. It ruled that Lawyer did not breach any duty to Client by seeking payment of his fees.

## I.

### Standard for Summary Judgment

¶ 8 Client appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup. Ct. R. 1.36, 12 O.S. Supp.2013, Ch. 15, App. 1. She contends the trial court erred in granting summary judgment because there are material facts in dispute. The facts she contends are material relate to the terms of the attorney/client contract. Appellate review of a summary judgment is conducted de novo. *Manley v. Brown*, 1999 OK 79, ¶ 22, 989 P.2d 448. All facts and inferences must be viewed in the light most favorable to the non-movant. *Id.*

¶ 9 Accordingly, in analyzing Client's claim, we will assume that Lawyer orally guaranteed that he would seek all fees from

Client's husband and that he represented that the written contract was merely to present in court as evidence of the fees charged that were to be paid by Client's husband. Client acknowledges that she signed the written contract, albeit without reading it. We will assume that as a result of Lawyer's collection efforts, Client paid to Lawyer the $5,000.00 from her IRA account and suffered mental anguish and anxiety..

## II.

### Breach of the Implied Duty of Good Faith and Fair Dealing

¶ 10 Client contends that every contract contains an implied covenant of good faith and fair dealing, and an attorney-client relationship stems from a contract of adhesion which should be liberally construed to support an action for bad faith.

¶ 11 In *Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899, the Supreme Court adopted the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive damages may be sought. *Christian*, ¶ 25. Although it is implied in every contract that the parties will carry out the agreement in good faith, a breach of that duty ordinarily sounds in contract and not tort.[1]

¶ 12 *Christian* recognized that the insurance industry is quasi-public in nature, and subject to governmental regulation. *Christian*, ¶ 11. Great disparities in economic power and bargaining ability exist between insureds and insurance companies, and a consumer may be without means of protection from instances of abuse. *Christian*, ¶ 10, citing *Fletcher v. Western National Life Ins. Co.*, 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970).

¶ 13 The implied covenant of good faith and fair dealing was adopted as a distinct tort, arising from a duty that is both non-consensual and imposed by law. *Christian*, ¶ 6. In contrast, the attorney-client relationship is a private, consensual contract and the duties are imposed from the terms of the contract and the professional relationship.[2] The rationales underpinning *Christian* are not present in this case and we decline to extend the tort of bad faith to the attorney-client relationship.[3]

## III.

### Breach of Fiduciary Duty

¶ 14 Client argues Lawyer breached her trust when he failed to follow through with their agreement concerning the collection of his fee. A fiduciary relationship exists between two persons when one of them is under a duty to act or give advice for the benefit of another upon matters within the scope of that relation. *May v. The Oklahoma Bank and Trust Company*, 2011 OK 52, ¶ 15, n. 3, 261 P.3d 1138. "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Schovanec v. Archdiocese of Oklahoma City*, 2008 OK 70, ¶ 43, 188 P.3d 158 [quoting Restatement (Second) of Torts 874 cmt. A (1979)]. The duty is based on the status of the parties and it arises from a relationship of trust and confidence. *Lowrance v. Patton*, 1985 OK 95, ¶ 18, 710 P.2d 108; *Panama Processes, S.A. v. Cities Serv.*

---

1. "Every contract in Oklahoma contains an implied duty of good faith and fair dealing." *Wathor v. Mutual Assurance Administrators, Inc.*, 2004 OK 2, ¶ 5, 87 P.3d 559, citing *Doyle v. Kelly*, 1990 OK 119, 801 P.2d 717. In ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability. *Wathor, Id.*, citing *Christian*.

2. The attorney-client relationship rests on contract, and it may be implied from the conduct of the parties. *State ex rel. Oklahoma Bar Association v. Green*, 1997 OK 39, ¶ 19, 936 P.2d 947. Lawyers are required to exercise ordinary professional skill and diligence in rendering their professional services. *Leak–Gilbert v. Fahle*, 2002 OK 66, ¶ 11, 55 P.3d 1054.

3. In *Rodgers v. Tecumseh Bank*, 1988 OK 36, ¶ 13, 756 P.2d 1223, the Supreme Court declined to extend the tort of bad faith to commercial loan agreements. In *Hinson v. Cameron*, 1987 OK 49, ¶ 13, 742 P.2d 549, the tort was not extended to the employment at-will relation.

*Co.,* 1990 OK 66, ¶ 35, 796 P.2d 276. The lawyer-client relationship is a fiduciary relationship. *Lowrance v. Patton,* 1985 OK 95, ¶ 17, 710 P.2d 108.

■ ¶ 15 The scope of a client's claim against an attorney for breach of fiduciary duty is a question of first impression in Oklahoma. In 2008, The Supreme Court adopted Oklahoma Uniform Jury Instructions 26.1 through 26.5 prescribing the law on the tort of breach of fiduciary duty.[4] We agree that in order to recover on a claim of breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages.

■ ¶ 16 The issue in this case is whether Client presented evidentiary material creating a factual question as to breach of a fiduciary duty. If the facts surrounding the disputed transaction may be characterized as a breach of a fiduciary duty, then the trial court's summary judgment must be reversed. *Roberson v. PaineWebber, Inc.,* 2000 OK CIV APP 17, ¶ 13, 998 P.2d 193 (Okla.Civ.App. 1999). If there is no evidentiary support for a breach of a fiduciary duty, then the judgment must be affirmed. *Schovanec,* ¶ 43.

¶ 17 Lawyer contends the undisputed material facts do not support a cause of action for breach of fiduciary duty. He argues Client only vaguely asserted a breach of trust directed toward payment for legal services. According to Lawyer, his demand for payment was within the terms of the written attorney-client contract and cannot reasonably be construed as a breach of fiduciary duty.

¶ 18 Client characterizes her claim as a breach of trust. She testified at her deposition that when she received Lawyer's letter demanding payment she believed the relationship had been compromised and Lawyer no longer had her best interests at heart. She felt he had not followed through with their agreement that he would collect his fee from her husband.

■ ¶ 19 An attorney's fiduciary duties are not of the same character as the duties arising from the rendition of professional legal services. "In a negligence case for rendition of substandard legal service, the primary issue is whether a lawyer's conduct of litigation-related defense fell below the acceptable professional standards." *Manley,* ¶ 9. The plaintiff in a legal negligence action must prove (1) the existence of an attorney-client relationship, (2) breach of a lawyer's duty to the client, (3) the facts constituting the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury and (5) but for the lawyer's conduct, the client would have succeeded in the action. *Manley,* ¶ 8. It is readily evident that an attorney's fiduciary duties, those relating to the client's trust and confidence, are independent from an attorney's duty of care regarding the professional services rendered.[5]

¶ 20 Other states addressing this issue have distinguished between a claim for legal negligence and a claim for breach of an attor-

---

4. The Uniform Jury Instruction Committee cited *FDIC v. Grant,* 8 F.Supp.2d 1275, 1299 (N.D.Okla.1998) as authority for the elements of breach of fiduciary duty.

5. Several Oklahoma cases provide insight on the fiduciary relationship between client and lawyer. In *Renegar v. Bruning,* 1942 OK 99, 190 Okla. 340, 123 P.2d 686, a lawyer breached his fiduciary duty by self-dealing in a real estate transaction which was also the subject of his legal representation. In *Shaffer v. Jeffery,* 1996 OK 47, 915 P.2d 910, the court considered clients' allegations that their lawyer's inclusion of an arbitration clause in the contract for legal services was induced by fraud. The court held this dispute was contractual in nature. It also cited a federal case that decided such a contract could not be

voided on grounds that it constituted a breach of the attorney's fiduciary duty. *Shaffer,* ¶ 5, n. 2, citing *McGuire, Cornwell & Blakey v. Grider,* 765 F.Supp. 1048 (D.Colo.1991). In *Northeastern Okla. Community Development Corp. v. Adams,* 1973 OK 58, ¶¶ 14–15, 510 P.2d 939, the court described an attorney's duty to avoid a conflict of interest as an obligation of fidelity. Oklahoma attorneys have been disciplined for breaching their fiduciary duties in connection with misuse of client trust funds (*State ex rel. Oklahoma Bar Assoc. v. Busch,* 1998 OK 103, ¶ 42, 976 P.2d 38), and making sexual advances in the attorney-client relationship (*State ex rel. Oklahoma Bar Assoc. v. Gassaway,* 2008 OK 60, ¶ 35, 196 P.3d 495).

ney's fiduciary duty.[6] One court explained that "not all lawyer obligations are fiduciary duties ... An attorney's fiduciary duties equate specifically to client loyalty and confidentiality, in contrast to contractual obligations or the duty of due care." *Costa v. Allen*, 274 S.W.3d 461 (Mo.2008).

¶ 21 In *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179 (Tex.App.2002), the Texas court considered the legal sufficiency of a client's claims for breach of fiduciary duty in connection with an attorney fee dispute. The court analyzed the issue by examining the precise actions taken by the attorney and classifying them, in the light most favorable to the client (as the non-moving party), as legal negligence, breach of contract, breach of fiduciary duty, or some other claim. *Deutsch*, pp. 187–189. The client presented a disputed question of fact as to whether the lawyer had agreed to bill his work based on the actual time he expended or in quarter-hour increments. The court held this controversy about billing procedures pertained to the agreement between the client and lawyer. Implicit in the holding was the conclusion that the fee dispute did not implicate the lawyer's fiduciary duty.[7]

¶ 22 The reasoning in *Deutsch* is persuasive. In the instant case, Client clearly testified she felt Lawyer abandoned her, placed his interests above hers, and generally betrayed her trust. This testimony describes the legal concept underlying the tort of breach of fiduciary duty. However, we are obliged to examine the nature of the disputed transaction rather than the client's subjective response to it.[8]

¶ 23 The parties disagree on who should be ultimately responsible for payment of Lawyer's fee. It is undisputed that the written contract authorized Lawyer to collect his fee from Client. The relevant question is the enforceability of that provision considering the Lawyer's oral assertions as alleged by Client. We conclude the alleged conduct, enforcing a contract despite having orally agreed not to do so, does not implicate Lawyer's fiduciary duties of loyalty, trust, and confidence.[9]

¶ 24 Client expressly opted to limit her claims to bad faith and breach of fiduciary duty. Because Client has no actionable claim for breach of the implied duty of good faith and fair dealing, and because she did not

6. *Klemme v. Best*, 941 S.W.2d 493 (Mo.1997)(a claim for an attorney's breach of fiduciary duty is equivalent to constructive fraud and is actionable when the claim is independent of any legal malpractice); *Duerr v. Brown*, 262 S.W.3d 63, 73 (Tex.App.2008)(legal malpractice focuses on the lawyer's requisite level of skill, while a breach of fiduciary duty encompasses whether an attorney obtained an improper benefit from the representation); *Calhoun v. Rane*, 234 Ill.App.3d 90, 175 Ill.Dec. 304, 599 N.E.2d 1318, 1321 (1992)(not every cause of action for professional negligence also sets forth a separate and independent cause of action for breach of fiduciary duty); *TVGA Engineering, Surveying, P.C. v. Gallick*, 45 A.D.3d 1252, 846 N.Y.S.2d 506 (2007)(facts constituting breach of fiduciary duty are separate and distinct from those that form the basis of a legal malpractice cause of action); *Moguls of Aspen, Inc. v. Faegre & Benson*, 956 P.2d 618 (Colo.App. 1997)(a claim for a fiduciary duty violation may be viable if separate and independent from any alleged negligence); *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct.App. 1996)(breach of fiduciary duty provides a basis for legal malpractice separate and apart from professional negligence).

7. However, the court concluded there were genuine issues of material fact as to whether the law firm breached its fiduciary duty by engaging in representation that constituted a conflict of interest. *Deutsch*, p. 192.

8. "In all cases, the determination of the existence of a fiduciary relationship depends upon the factual circumstances, including the relationship of the parties involved, to each other and to the disputed transaction." *First National Bank and Trust v. Kissee*, 1993 OK 96, ¶ 32, 859 P.2d 502.

9. Disputes arising from a lawyer's fee agreement are not categorically excluded as a basis for a claim of breach of fiduciary duty. In *State ex rel. Oklahoma Bar Association v. Hatcher*, 1969 OK 42, ¶¶ 18–19, 452 P.2d 150, an attorney was disciplined for taking advantage of a client in connection with a fee agreement. "The attorney-client relationship is ... of the highest trust and confidence. This relationship requires that an attorney's dealings with his client must be characterized by the utmost candor and fairness." *Id.* Just as a court must occasionally characterize a claim as sounding in tort or contract (i.e. *Great Plains Federal Savings and Loan Assoc. v. Dabney*, 1993 OK 4, 846 P.2d 1088), trial judges may determine as a legal matter, when the material facts are undisputed, whether the duty a lawyer is alleged to have breached is of a fiduciary nature.

present evidentiary material creating a factual dispute as to breach of a fiduciary duty, the trial court's order granting summary judgment is affirmed.

BUETTNER, J., and BELL, J., concur.